**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| SUNTRUST EQUIPMENT FINANCE & LEASING CORP., <br><br> Plaintiff, <br><br> vs. <br><br> INTERNATIONAL SPEEDWAY CORPORATION, <br><br> Defendant. | CIVIL ACTION <br><br> FILE No. _____ <br><br> COMPLAINT FOR DECLARATORY JUDGMENT |

# **COMPLAINT**

COMES NOW, SUNTRUST EQUIPMENT FINANCE & LEASING CORPORATION, a Georgia corporation ("STEFL"), Plaintiff in the above-referenced civil action, and files this, by and through the undersigned counsel, its Complaint pursuant to 28 U.S.C. §§2201 and 2202, against Defendant INTERNATIONAL SPEEDWAY CORPORATION, a Florida corporation ("ISC"). In support thereof, Plaintiff respectfully shows this honorable Court as follows:

## **PARTIES**

1. Plaintiff STEFL is a corporation duly organized and existing under and by virtue of the laws of the State of Georgia, and is authorized to do business and doing business in Fulton County, Georgia.

2. Plaintiffs are informed and believe and thereon allege that Defendant ISC is a corporation duly organized and existing under and by virtue of the laws of the State of Florida. It may be served with process by serving its registered agent, W. Garret Crotty,

-1-

COMPLAINT

One Daytona Blvd., Daytona Beach, Florida 32114.

## JURISDICTION AND VENUE

3. Jurisdiction is proper under the constitution of the United States of America and the laws of the State of Georgia.

4. Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. §1391 (a)(1), (a)(2) and (b)(2). The Northern District of Georgia is where a substantial part of the events or omissions giving rise to the claims occurred. The parties also agreed to and consented to the Northern District of Georgia pursuant to a forum selection clause in one of the contracts at issue in this litigation.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332. Plaintiff and Defendant are citizens of different states and the amount in controversy, without interests and costs, exceeds seventy-five thousand dollars ($75,000.00). That is, STEFL is a Georgia corporation that maintains its principal place of business in Atlanta, Georgia and ISC is a Florida corporation which maintains its principal place of business in Daytona Beach, Florida. Further, the subject action involves contractual claims that either seek damages in excess of the jurisdictional amount or would result in losses to STEFL in excess of the jurisdictional amount. The actual amount in controversy in this matter exceeds $47,000,000.

## INTRODUCTION

6. Plaintiff incorporates the allegations contained in Paragraphs 1 through 5, inclusive, as though fully set forth herein.

7. This is a contract action involving a Master Lease Agreement, a Sublease Agreement and two addendums thereto. The agreements relate to the

COMPLAINT

leasing of 500 portable generators that were ultimately subleased and used by ISC at five of their racecar speedways, including California (Fontana), Michigan, Talladega, Kansas and Darlington.

## FACTS

1. <u>Master Lease</u>:  On September 25, 2017, STEFL entered into a Master Lease Agreement No. 10194 ("MLA") with DC Solar Distribution, Inc. ("DC Distribution").  (A true and correct copy of the MLA is attached hereto as *Exhibit "1"*.)

2. <u>Schedule 001</u>:  On September 28, 2017, STEFL and DC Distribution entered into Schedule 001 to the MLA, whereby STEFL leased 300 mobile solar generators to DC Distribution.  Schedule 001 provided for payments over a ten-year term at $232,500 per month. (A true and correct copy of Schedule 001 to the MLA is attached hereto as *Exhibit "2"*.)   The generators were purchased by STEFL pursuant to a Sales Agreement with DC Solar Solutions, Inc. ("DC Solutions") also dated September 28, 2017.  STEFL paid $45,000,000 for the generators.

3. <u>Schedule 002</u>:  On November 3, 2017, STEFL and DC Distribution entered into Schedule 002 to the MLA, whereby STEFL leased 200 mobile solar generators to DC Distribution.  Schedule 002 provided for payments over a ten-year term at $155,000 per month. (A true and correct copy of Schedule 002 to the MLA is attached hereto as *Exhibit "3"*).  The generators were purchased by STEFL pursuant to a Sales Agreement with DC Solutions also dated November 3, 2017. STEFL paid $30,000,000 for the generators.

4. STEFL entered into the MLA and Schedules 001 and 002 with the understanding that DC Distribution was going to sublease the generators to ISC for

a comparable lease term and that the payments under the sublease would be used to pay the amounts owed under the MLA. Part of STEFL's analysis of the financially viability of this three party transaction depended upon the sublease to ISC.

5. <u>Sublease</u>: On or about September 27, 2017, DC Distribution entered into a sublease (the "Sublease") with ISC wherein the 500 generators were subleased to ISC "as they come available." The term of the Sublease was 10 years at $900 a month per unit. Thus, when all 500 units are delivered, as they are now, the monthly rental is $450,000. A copy of the Sublease was delivered to STEFL prior to closing. (A true and correct copy of the Sublease is attached hereto as *Exhibit "4"*).

6. <u>Sublease Addendum #1</u>: Unbeknownst to STEFL, DC Distribution and ISC entered into an Addendum #1 to the Sublease also dated September 27, 2017. Addendum #1 materially alters the terms of the Sublease significantly. It grants ISC a unilateral right to terminate the Sublease after five and a half years. It also amends the Sublease by inserting a cross-default provision. It further amends the Sublease by attempting to tie the performance by DC Distribution under various sponsorship agreements to a unilateral termination right for ISC under the Sublease. (A true and correct copy of Addendum #1 is attached hereto as *Exhibit "5"*). If enforced Addendum #1 gives ISC the right to terminate the Sublease after a sixty-six month term, or if certain conditions are met terminate immediately. STEFL would never have agreed to these provisions, which were on information and belief, deliberately omitted from the Sublease so that only the actual Sublease would be approved by STEFL without notice of these additional material provisions that effectively gut STEFL's rights under the MLA and Sublease.

7. <u>The Sponsorship Agreements</u>:  DC Solutions, not DC Distribution, entered into five sponsorship agreements with ISC.  These agreements are referenced in the Addendum #1 at paragraphs 23 and 24 and referred to as the "2018 Sponsorship Agreements." However, Addendum #1 contemplates that DC Distribution would be entering into them.  This never occurred.  Rather, DC Solutions entered into them. On information and belief, STEFL alleges that ISC knowingly kept the existence of the addendums from STEFL so that it could enter into a financially favorable transaction with the DC Solar entities that allowed it to receive payments under the sponsorship agreements that exceeded the amounts owed under the Sublease.  Thus, during the five-year term of these sponsorship agreements, ISC had a net income from its dealings with the DC Solar entities.  At the end of that five-year term it could then exercise the termination right in paragraph 22 of Addendum #1 and walk away from the Sublease.  All of this was coordinated by and between ISC and the DC Solar entities without STEFL's consent or knowledge.

8. <u>Sublease Addendum #2</u>:  Unbeknownst to STEFL, DC Distribution and ISC entered into an Addendum #2 to the Sublease also dated March 6, 2018.  This addendum seeks to delete section 2 of the Sublease and replace it with an identical version.  This attempted amendment is, obviously, without consequence. It also amends the tax treatment of Sublease at paragraph 11 and deletes ISC's obligations to pay sales and use taxes related to the generators. (A true and correct copy of Addendum #2 is attached hereto as *Exhibit "6"*).

9. <u>STEFL's Security Interest in the Sublease</u>: In connection with Schedule 001 and 002, pursuant to the terms of a written Subleasing Consent and Amendment, DC Distribution granted STEFL a continuing security interest in the

Sublease and all proceeds thereof.  STEFL perfected its security interest by recording a Financing Statement on October 17, 2017.  (A true and correct copy of the Financing Statement is attached hereto as *Exhibit "7"*).

10. <u>Notice to ISC of Foreclosure of Security Interest</u>:  On January 15, 2019, STEFL provided written notice to ISC that pursuant to its security interest in the Sublease it was exercising its remedies due to the default of DC Distribution under the MLA and would be assuming the role of sublessor under the Sublease.  ISC was instructed to begin making monthly payments under the Sublease directly to STEFL.  (A true and correct copy of the written notice is attached hereto as *Exhibit "8"*).  ISC has not made any payments to STEFL and is in default under the Sublease.  Although ISC has admitted that it owes STEFL the rent, on information and belief, STEFL alleges that ISC has no intention of making any further payments under the Sublease because DC Distribution and DC Solutions have filed for bankruptcy and are no longer making payments under the sponsorship agreements.

11. <u>DC Distribution's and DC Solution's Bankruptcy</u>:  On February 4, 2019, DC Distribution and DC Solutions, along with a collection of related companies, filed for Chapter 11 bankruptcy relief.  The bankruptcies are being jointly administered by the U.S. Bankruptcy Court, District of Nevada.  On February 25, 2019, ISC filed a motion for relief from stay in the bankruptcy proceedings.  On information and belief, ISC is seeking relief from stay so that it may exercise its remedies with respect to the sponsorship agreements and terminate those along with the Sublease.

12. <u>Potential Damage to STEFL & Amount in Controversy</u>:  If Addendum #1 were considered valid and ISC terminated the Sublease after five and half years,

then STEFL would be left with no recourse for the remaining four and half years making its potential losses in excess of $24,000,000. An immediate termination under Addendum #1 would result in losses in excess of twice that amount.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment Against ISC)

13. STEFL incorporates by reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

14. An actual controversy has arisen between STEFL and ISC regarding the validity and enforceability of Addendum #1 such that STEFL seeks a judicial declaration and judgment that Addendum #1, or portions thereof, are invalid, void and unenforceable. The basis for this relief include but are not limited to:

   a. ISC and/or DC Distribution defrauded STEFL by not disclosing the terms of Addendum #1 to STEFL;
   b. ISC and/or DC Distribution knew or should have known that STEFL would not finance this three party transaction if the terms of Addendum #1 were known to it;
   c. ISC and/or DC Distribution knew or should have known that STEFL would not finance this three party transaction with the knowledge that DC Distribution was entering into a negative income relationship with ISC;
   d. STEFL is a third party beneficiary of the Sublease;
   e. Addendum #1 is both procedurally and substantively unconscionable;
   f. Addendum #1 contemplates the formation of sponsorship agreements between DC Distribution and ISC that were

      condition precedents for enforcement of the terms of the addendum and these conditions were not satisfied;

g. Addendum #1's cross-default provision (paragraph 23) does not encompass any other agreements or obligations on the part of DC Distribution as it fails to identify any other agreements or obligations and fails to define the material term "obligations";

h. The Sublease, which provides for the remedies for default thereunder, does not provide ISC with the right to termination;

i. The right to termination, if it exists in Addendum #1 is not applicable to the Sublease because it is not in default.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

1. For a declaratory judgment that Addendum #1 is wholly void, voidable or unenforceable;
2. For a declaratory judgment that portions of Addendum #1 are void, voidable or unenforceable;
3. For a declaratory judgment that certain conditions precedent for enforcement of provisions of Addendum #1 have not been met;
4. For a declaratory judgment that ISC has no right to terminate the Sublease;
5. For a declaratory judgment that STEFL is a third party beneficiary under the Sublease;
6. For a declaratory judgment that STEFL is entitled to the full amount owed under the Sublease;

7. For costs of suit, including reasonable attorneys' fees; and

8. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims for relief triable in this lawsuit.

DATED: April 3, 2019

    GORDON REES SCULLY MANSUKHANI

    */s/Leslie K. Eason*
    Leslie K. Eason (Georgia Bar 100186)
    leason@grsm.com
    Burton Peebles (Georgia Bar 126109)
    bpeebles@grsm.com
    GORDON REES SCULLY MANSUKHANI
    3455 Peachtree Road, Suite 1500
    Atlanta, GA  30326
    Telephone: (404) 869-9054
    Facsimile: (678) 389-8475

    Benjamin T. Morton *(Pro Hac Vice PENDING)*
    bmorton@grsm.com
    GORDON REES SCULLY MANSUKHANI
    101 W. Broadway Suite 2000
    San Diego, CA 92101
    Telephone:  (619) 230-7755
    Facsimile:  (619) 696-7124

    Attorneys for Plaintiff SUNTRUST EQUIPMENT FINANCE & LEASING CORP.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirement of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

/s/ *Leslie K. Eason* ___
Leslie K. Eason